No. 16-5103

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————————————

Mark W. Mayhew,
*Plaintiff – Appellant,*

v.

Town of Smyrna, Tennessee, and Harry Gill,
*Defendants – Appellees.*

## On Appeal from the United States District Court
## for the Middle District of Tennessee

———————————————————————

## REPLY BRIEF OF APPELLANT
## MARK W. MAYHEW

———————————————————————

Douglas B. Janney III (BPR No. 19112)
2002 Richard Jones Road
Suite B-200
Nashville, Tennessee 37215
(615) 742-5900

*Counsel for Appellant Mark W. Mayhew*

# TABLE OF CONTENTS

Table of Contents …………………………………………………….……i

Table of Authorities …………………………………………….......................ii

Argument …………………………………………………….................1

    I.      The District Court Incorrectly Dismissed Mayhew's First
               Amendment Retaliation Claims ………………………………………...1

            A.     The Court should hold that the question of whether
                      speech is constitutionally protected is one of fact or
                      fact and law ……………………………………………………1

            B.     Mayhew's speech was constitutionally protected ……………..3

                    1.     Mayhew spoke as a citizen …………………………..3

                    2.     Mayhew spoke on matters of public concern …………..8

                            a.     Mayhew's claims regarding Gill's
                                    violations of Town hiring policy and
                                    practice and appointment of unqualified
                                    individuals were included in his
                                    complaint and addressed throughout
                                    the litigation ……...................................................8

                          b.     Mayhew's communications about Gill's
                                      violations of Town hiring policy and
                                      practice and appointments were protected ……..10

Conclusion …………………………………………………….................18

Certificate of Compliance …………………………………………….…..18

Certificate of Service …………………………………………………..19

# TABLE OF AUTHORITIES

## Cases

*Banks v. Wolfe County Bd. of Educ.*,
    330 F.3d 888 (6th Cir. 2003) ……………………………........8, 11-12, 16

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) ……………………………10, 13

*Boulton v. Swanson*, 795 F.3d 526 (6th Cir. 2015) ………………………..….1, 3

*Connick v. Myers*, 461 U.S. 138 (1983) …………………………………..………12

*Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013) (en banc) …………..………..2

*Flora v. County of Luzerne*, 776 F.3d 169 (3d Cir. 2015) …………………..……..3

*Garcetti v. Cellabos*, 547 U.S. 410 (2006) …………………………………..……..2

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) ………..………..5, 7

*Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169 (6th Cir. 2008) ….......14

*Lane v. Franks*, ___ U.S. ___,
    134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014) ………………………………1, 3

*Miller v. City of Canton*, 319 Fed. Appx. 411 (6th Cir. 2009) …………………...16

## Rules

Fed. R. Civ. P. 12 ………………………………………………………………..9

# ARGUMENT

## I. The District Court Incorrectly Dismissed Mayhew's First Amendment Retaliation Claims

### A. The Court should hold that the question of whether speech is constitutionally protected is one of fact or fact and law

Appellees argue that Mayhew has "provided no support for his proposition that based on *Lane* [*v. Franks*, 134 S. Ct. 2369], this Court should hold that whether an employee's speech is protected should be a question of fact or mixed question of fact and law." (Doc. 27 at 36). Mayhew cited *Lane* and *Boulton v. Swanson*, 795 F.3d 526 (6th Cir. 2015), in which the Court recognized "*Lane's* narrowing of the *Garcetti* exception 'by including 'ordinary' as a modifier to the scope of an employe[e]'s job duties.'" *Id.* at 534 (quoting *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 990 (3d Cir. 2014)). The Supreme Court used the unprecedented modifier "ordinary" nine times in *Lane*. Determining whether Mayhew's speaking out to Town officials in special investigations, in an email sent on a Sunday, and at a meeting at City Hall, outside of the wastewater treatment plant ("Plant"), about (1) Leland Noble's pressuring him to change or falsify data at the Plant to yield more favorable results and (2) Town Manager Gill's violations of Town hiring policy and practice and immediate appointments of two individuals who lacked the required qualifications for the two highest positions at the Plant, to

the exclusion of other qualified individuals, was part of his "ordinary" job duties should be determined by the trier of fact.

Appellees incorrectly argue that "Mayhew has not even suggested that a reasonable jury could have found that his job scope and duties were different than those that were determined by the District Court." (Doc. 27 at 37). They and the district court relied heavily on a written job description that Appellees did not even ask Mayhew about at his deposition. (Doc. 27 at 10-11). In *Garcetti* the Supreme Court held, "Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti v. Cellabos*, 547 U.S. 410, 424-25 (2006). Here Appellees did not develop a factual record sufficient to establish that Mayhew's speech activity was part of his ordinary duties and Mayhew repeatedly disputed that that was the case. (RE 40-1, Mayhew Dep. at 119, Page ID # 562; RE 40-2, Mayhew Dep. Vol. II at 202-03, Page ID # 645-46). They also appear to dispute that Mayhew made the statements that he claims he made in the July 7, 2014, meeting. (Doc. 27 at 45, lines 2-4). In these circumstances, the question of whether his speech was part of his ordinary duties should be "a question of fact" or fact and law. *Dahlia v. Rodriguez*, 735 F.3d 1060,

1072-73 (9th Cir. 2013) (en banc), *cert. denied*, 134 S. Ct. 1283 (2014) (so holding); *Flora v. County of Luzerne*, 776 F.3d 169, 175-76 (3d Cir. 2015) (holding "there was a factual dispute as to whether Flora's job duties encompassed making the statements at issue. . . . [T]he District Court in effect made factual determinations as to the scope of Flora's duties. . . . In doing so, it erred.").

### B.    Mayhew's speech was constitutionally protected

### 1.    Mayhew spoke as a citizen

Mayhew's June 2014 reports of illegal conduct at the Plant in special investigations and his July 1 and 7, 2014, communications reiterating those concerns and speaking out about Gill's violating Town hiring policy and practice and appointing unqualified individuals to the two highest positions at the Plant were constitutionally protected.  Appellees argue, for the first time on appeal, that Mayhew did not speak "as a citizen" because his speech activity was "in the ordinary scope of" his duties. (Doc. 27 at 39).   In the district court they argued that his speech was not protected for a different reason – *i.e.*, because it was allegedly "job related," "ar[o]se in connection with" and "owe[d] its existence to" his duties. (RE 31, Mem. Supp. Mot. Suum. J. at 21, Page ID # 114).  As Mayhew argued in the district court, however, the issue is not whether his speech was "job related," "owed its existence to," or "concerned" his job duties but, rather, whether it was "ordinarily within the scope of [his] duties . . . ." *Lane*, 134 S. Ct. at 2379; *Boulton*,

795 F.3d at 534.  As shown in his brief, Mayhew's speech was not within or a part of his ordinary duties. (Doc. 24 at 41-44).

Appellees incorrectly assert that "[n]either party has disputed the duties that constitute Mayhew's job responsibilities." (Doc. 27 at 40).  While his duties may have included reporting the illegal activity at issue to the Plant Manager,[1] Mayhew disputed that they included reporting it to the Utilities Directors outside the Plant and, moreover, to the Town Manager, the HR Director, and the Town Attorney in the July 7, 2014, meeting.  He repeatedly testified that this speech was "completely separate and outside [his] normal job . . . duties" and that he had "never reported these things to Mark Parker, Mike Strange, or management in [his] nearly 19 years at the plant." (RE 40-1, Mayhew Dep. at 119, Page ID # 562; RE 40-2, Mayhew Dep. Vol. II at 202-03, Page ID # 645-46).  That he had never done it in 19 years strongly suggests that it was not within or part of his ordinary duties.  His statements to this audience in special investigations, in an email sent on a Sunday, and at a meeting at City Hall away from the Plant were "were 'extraordinary rather

---

[1] Appellees continue to confuse the Plant discharge violations that Mayhew was required to report and did report to the TDEC and the EPA with the illegal conduct at issue – i.e., Noble's pressuring him to change or falsify data, which he reported to the Plant Manager, but was not obligated to report further. (Doc. 24 at 14-15).  They also incorrectly assert that "Mayhew did not identify and that no portion of the record existed that contained any information regarding specific instances of misconduct by Noble . . . ." (Doc. 27 at 15).  Mayhew reported the misconduct to Roberts (Doc. 24 at 14-15) and provided him documentation of it. (RE 42-6, Mayhew Dep. Ex. 9, Page ID # 1810-33).

than everyday communication.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 542 (6th Cir. 2012).

Appellees next incorrectly assert that "Mayhew has not suggested or argued that meeting with [Strange and Parker] would not have been a part of his ordinary responsibilities." (Doc. 27 at 42).   Mayhew has repeatedly argued that meeting with Strange and Parker in the context of their special investigations in June 2014 and then meeting with Gill, Strange, HR Director Craig, and Town Attorney Peach at City Hall on July 7, 2014, was in no way a part of his ordinary duties. (Doc. 24 at 41-44).  Appellees acknowledge that, in the special investigations, his "speech did occur during a serious of interviews that admittedly were not 'ordinary' at the Plant," which supports Mayhew's argument about the "context" of his speech. (Doc. 27 at 42).[2]  They claim that his July 1, 2014, email "was not sent to anyone 'extraordinary' or outside the 'chain of command'" but never address the fact that it was sent to Gill, Mayor Reed, and Councilman Cole, who were well outside the chain of command, on the same day that he sent it. (*Id*.; Doc. 24 at 42-43).

Finally, Appellees argue that "for whatever reason, Mayhew did not report any of this activity to an outside agency or to any person or entity outside of his

_____

[2] Appellees incorrectly assert that the "series of Plant employee interviews" were "related to Roberts' suspension." (Doc. 27 at 17).   While there were interviews about Roberts allegedly drinking an Angry Orchard Cider at work, Strange and Parker subsequently conducted additional interviews on June 17-18, 2014, about employee problems at the Plant. (RE 40-5, Strange Dep. 22-30, Page ID # 1117-24; RE 42-1, Gill Dep. Ex. 3, Page ID # 1518-29).

5

work channels and only to the chain of command at Smyrna." (Doc. 27 at 43). The

"reason" he did not report Noble's pressuring him to change or falsify data to an

outside agency was simple – he did not get a chance to do so before Gill

discharged him in the same meeting in which he reported the conduct to Gill,

Strange, HR Director Craig, and Town Attorney Peach. (RE 40-1, Mayhew Dep.

Vol. I at 124, Page ID # 567; RE 40-3, Gill Dep. at 162, Page ID # 953). Further,

Mayhew reasonably wanted to give Appellees an opportunity to actually

investigate and correct Noble's conduct before going to the newspaper, for

example. Appellees repeatedly assert that "Strange and Parker had assured [Gill]

that when they had looked into the claim, there had been no merit to it." (Doc. 27

at 19, 25-26). But the record establishes that Strange, Parker, and Gill conducted

no investigation into Mayhew's concerns at any time, and that when Mayhew

brought them to Gill, Craig, and Attorney Peach, Gill fired him. Indeed, other than

stating to Noble and Mayhew that "we would not be changing any numbers,"

Appellees admit that they conducted no investigation into Mayhew's reported

concerns. (RE 40-5, Strange Dep. at 15-16, 51, 56, 71-75, Page ID # 1110-11,

1146, 1151, 1166-70; RE 40-6, Parker Dep. at 27-28, 32-33, 60-62, Page ID #

1205-06, 1210-11, 1238-40; RE 40-3, Gill Dep. at 127, 151, Page ID # 918, 942;

RE 40-4, Craig Dep. at 54, 75-76, Page ID # 1047, 1068-69).[3]    Additionally,

---

[3] Appellees assert that former Plant Manager Roberts allegedly "conducted

Parker had admonished Mayhew not to report his concerns beyond him "so that [his] job was not placed in jeopardy" and so as not to "affect[] his job status." (RE 40-1, Mayhew Dep. Vol. I at 119, 140-41, Page ID # 562, 583-84; RE 40-2, Mayhew Dep. Vol. II at 289, Page ID # 732; RE 40-6, Parker Dep. at 24, 67-68, Page ID # 1202, 1245-46). In any case, Mayhew's speaking out about the conduct of Noble and Gill in special investigations, in an email, and in a meeting at City Hall was extraordinary speech that was not a part of his ordinary job duties. *Handy-Clay*, 695 F.3d at 544 ("although Handy-Clay did not present her concerns to the public at large, her communications to individuals outside her department . . . were related to issues of public concern even though expressed in private discourse."). Thus, Mayhew's communications about the illegal activity at issue were made as a citizen and not in the ordinary course of his work.

---

his own thorough investigation" (Doc. 27 at 14) but that is completely irrelevant because Appellees repeatedly testified that Roberts never advised them of Mayhew's concerns or of any such investigation. (RE 40-3, Gill Dep. at 40, Page ID # 831; RE 40-6, Parker Dep. at 19, Page ID # 1197; RE 40-5, Strange Dep. at 76-77, Page ID # 1171-72). Indeed, they state in their brief that the June 2014 special investigation was "the first notice they had from anyone of any suggestion, talk, or allegation of anyone attempting to pressure or otherwise change Plant testing date or numbers. (Doc. 27 at 18). As shown, they did nothing to investigate the concerns that they admit Mayhew reported to them.

### 2.    Mayhew spoke on matters of public concern

### a.    Mayhew's claims regarding Gill's violations of Town hiring policy and practice and appointment of unqualified individuals were included in his complaint and addressed throughout the litigation

In their motion for summary judgment, Appellees did not argue that Mayhew did not speak on matters of public concern. (RE 31, Mem. Supp. Summ. J. at 16-22, Page ID # 109-15).  They only argued that he was speaking as an "employee" rather than as a "citizen." *Id.*  It was only when Mayhew argued that his "speech addressed matters of public concern" and that he "complained about the same type of conduct that the plaintiff in *Banks* [*v. Wolfe County Bd. of Educ.*, 330 F.3d 888 (6th Cir. 2003)) did" in addition to Noble's conduct (RE 37, Resp. Mot. Summ. J. at 18-19, Page ID # 376-77), that Appellees, realizing that they had not moved on the issue, first attempted to claim that Mayhew did not raise his communications about Gill's violations of Town hiring policy and practice and appointment of unqualified individuals as a basis for his claims in his complaint. (RE 46, Reply at n. 6, Page ID # 2288).  They now make the same argument on appeal. (Doc. 27 at 44).  In doing so they impermissibly view the facts stated in the complaint in the light most favorable to themselves.  The claim was sufficiently described in paragraphs 10-29 and particularly paragraphs 14, 20, and 28 of the complaint.  Mayhew addressed both the "illegal conduct" and the "matters of public concern" he had spoken out about shortly before Gill discharged him,

including those related to Gill's policy violations and appointments, and stated that that was why he was discharged. (RE 1, Compl. ¶¶ 10-29, Page ID # 3-7). The claim was also detailed in the initial case management order. (RE 11, Case Mgmt. Order at 2-3, Page ID # 49-50). Appellees never filed a motion to dismiss or for a more definite statement under Fed. R. Civ. P. 12(b) or (e), nor did they move for summary judgment on the claim or the issue of whether Mayhew spoke on a matter of public concern; thus, they waived the argument. Furthermore, their own conduct demonstrates that they had fair notice of the claim. It was addressed in written discovery, in a conference with the court regarding related discovery, and in every deposition taken in the case. (Doc. 24 at 46-49 and n. 4). The documents related to Gill's "decision to place Leland Noble and Kyle Gill in the Plant Manager and Chief Operator positions" and the prior Plant job postings that Mayhew requested and Appellees produced and upon which the parties examined the witnesses were directly related to this claim and no other. (*Id*. at 47-48 and n. 4). It was addressed in Mayhew's summary judgment response and in Appellees' reply. (RE 37, Response at 6-13, 17-19, Page ID # 364-71, 375-77; RE 46, Reply at 4, Page ID # 2288). Thus, the claim was raised in the complaint and litigated throughout the case.

### b. Mayhew's communications about Gill's violations of Town hiring policy and practice and appointments were protected

Only the district court stated that Mayhew's communications about Gill's violations of Town hiring policy and practice and appointment of unqualified individuals did not address a matter of public concern – Appellees never made that argument, even in their summary judgment reply brief. (RE 59, Mem. Order at 25, Page ID # 2406; RE 46, Reply at 4-5, Page ID # 2288-89).  Respectfully, the district court's making summary judgment arguments for Appellees and dismissing Mayhew's case based in part on an argument that they never made was improper.

In any case, Appellees' new argument on appeal that "Mayhew has not produced evidence to support his claim that his statements regarding Gill's hiring practices were his attempt to voice a matter of public concern rather than the 'grumblings' of an upset employee" is incorrect. (Doc. 27 at 49).  In cases like this one involving multiple acts of expression, the Court analyzes each act of speech individually. *Bonnell v. Lorenzo*, 241 F.3d 800, 811-12 and n. 7 (6th Cir. 2001) ("'It is implicit in *Connick* that the court must examine each activity which the employee claims provided the actual motivation for his termination to see whether it touches upon a matter of public concern.'") (quoting *Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ.*, 776 F.2d 443, 451 (3d Cir. 1985)).  Viewing the facts and all reasonable inferences in the light most favorable to Mayhew and focusing

on "what he said" rather than why he said it reveals that the following, substantial

portions of his July 1, 2014, email addressed matters of public concern:

> It appears the Town of Smyrna has applied unfair and unequal practices in filling the two highest paid positions at the Smyrna Wastewater Treatment Plant on 6/27/14. It appears the Town Manager has bypassed normal hiring procedures to promote his nephew, Kyle Gill, as well as align him for the [Plant] Manager position, by not allowing anyone else to apply for these two positions and circumventing normal hiring protocol.
>
> ***
>
> Leland Noble does not meet the qualifications for this new position, as he does not have a college degree. I was disqualified for not having a degree when I applied for the [Plant Manager] position in 2004. I stated I have no interest in the Manager position this time but these positions should have been posted like every other position ever was, requiring same qualifications. Also, our department started using interview panels last year which obviously was not done this time either. Bypassing normal hiring protocol, especially after management was alerted to issues with Mr. Noble magnifies this hiring action. . . . [Noble is] the very same person that put pressure on me to hide violations, of which I refused to do.

(RE 42-2, Gill Dep. Ex. 21, Page ID # 1633-34). Appellees selectively pluck other

statements from the email, take them out of context, and improperly make

assumptions about Mayhew's alleged personal motivation rather than the actual

words he used and "what was said, rather than why it was said." *Banks*, 330 F.3d at

894-95 (6th Cir. 2003) ("We conclude that the district court erred by according too

much significance to Banks' personal motivations."). Irrespective of whether

Mayhew expressed "personal concern regarding his job security," the email refers directly to hiring and equal employment opportunity violations, perceived nepotism, the appointment of unqualified managers in safety-sensitive capacities, and the apparent overlooking of the previously reported illegal activity.  And Appellees fully understood this – Gill was "furious," thought "he was being accused of nepotism," and suspended and discharged Mayhew at least in part because of it. (RE 40-5, Strange Dep. at 50-51, Page ID # 1145-46; RE 40-3, Gill Dep. at 126, 160-62, Page ID # 917, 951-53).[4]  Further, Mayhew's concerns about Gill's appointing Kyle Gill to the Chief Operator position to the exclusion of all qualified candidates had no impact on his "job security" as that position had no supervisory authority over him.  Thus, the complaint of nepotism bore no relation to a "personal concern."  Under controlling authority, Mayhew's email touched on matters of public concern. *Banks*, 330 F.3d at 897; *see also Connick v. Myers*, 461 U.S. 138, 148-50 (1983) (holding that, even though plaintiff was motivated by private interest in combating decision to transfer her, fact that one of her 14

---

[4] Appellees now assert that Gill discharged Mayhew for the alleged reason that "there was not a full declaration [at the meeting] [Mayhew] was willing to work with Noble." (Doc. 27 at 26).  In his interrogatory answers and other submissions, however, Gill stated that he discharged him because he stated that he "could not work with Mr. Noble." (RE 40-3, Gill Dep. Ex. 4, Resp. Interrog. No. 10, Page ID # 1540).  At his deposition, Gill admitted this was false and that Mayhew never "refused" or said he "would not" or "could not" work with Noble. (RE 40-3, Gill Dep. at 139-41, 147, Page ID # 930-32, 938).  Rather, Mayhew repeatedly stated, "I'm able to work with him, and I will do my very best, sir." (RE 40-2, Mayhew Dep. Vol. II at 298-99, 303-04, Page ID # 741-42, 746-47).

questions addressed right not to be coerced into campaigning for a political candidate was enough to make her speech touch on a matter of public concern); *Bonnell*, 241 F.3d at 812 (holding, "We find the case at hand to be a mixed speech case inasmuch as Plaintiff's speech at issue concerns both private as well as public matters.").

Appellees further incorrectly state – without any citation to the record or to the district court's opinion – that the district court "also looked at what statements Mayhew had made in the July 7, 2014, meeting . . . and determined that Mayhew's speech largely advanced a private interest." (Doc. 27 at 50). The district court did no such thing. Rather, it only considered his statements in the July 1, 2014, email. (RE 59, Mem. Order at 21-25, Page ID # 2402-06). Thus, it did not "determine" anything with respect to his July 7, 2014, statements to Gill, Strange, Craig, and Attorney Peach outside of his department at City Hall. Those statements addressed matters of public concern.

Appellees contradict their above statement and incorrectly argue that "[t]he record . . . does not reflect that Mayhew voiced his concerns . . . about Gill's hiring practices on any other occasion than the July 1, 2014 email." (Doc. 27 at 45). The following evidence establishes a genuine issue of material fact on that point: In the July 7, 2014, meeting, Mayhew and Gill "went over the concerns [Mayhew expressed] in the July 1 email" and "then [Gill] fired him." (RE 40-3, Gill Dep. at

162, Page ID # 953).   Gill told Mayhew that "he didn't have to follow any protocol.  He can hire any way he sees fit" and "made mention of his nephew Kyle Gill" being "next in line." (RE 40-2, Mayhew Dep. Vol. II at 303-04, Page ID # 746-47).   Appellees' argument creates a genuine issue of material fact for a jury to decide regarding whether Mayhew engaged in protected speech since they now dispute the substance of his reports in the July 7, 2014, meeting. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008) ("there may be some factual questions for a jury if it is disputed whether the expression occurred or what words were specifically stated.").

Moreover, the district court and Appellees overlooked important contextual facts establishing that Mayhew's July 1 and July 7, 2014, speech activity involved matters of public concern.   When he sent the email on July 1 and met with Gill, Strange, Craig, and Attorney Peach on July 7, all parties were aware that Mayhew had recently reported Noble's illegal conduct.   And Appellees admit that they conducted no investigation into his reported concerns. (RE 40-5, Strange Dep. at 15-16, 51, 56, 71-75, Page ID # 1110-11, 1146, 1151, 1166-70; RE 40-6, Parker Dep. at 27-28, 32-33, 60-62, Page ID # 1205-06, 1210-11, 1238-40; RE 40-3, Gill Dep. at 127, 151, Page ID # 918, 942; RE 40-4, Craig Dep. at 54, 75-76, Page ID # 1047, 1068-69).   In addition to knowing this important fact on July 7, 2014, Mayhew knew that Gill had summarily appointed Noble and his nephew Plant

Manager and Chief Operator without allowing anyone else, including interested manager Lloyd Johnson, to apply, interview, or be considered.  He knew that Noble and Kyle Gill did not have the required qualifications.[5]  He knew that he had been disqualified from the Plant Manager position in the past specifically because, like Noble, he did not have the required degree.  As evidenced by his email, Mayhew considered all of this to be in violation of the Town's equal employment opportunity and hiring policy and practice, which included posting available positions and considering all qualified individuals.  Gill's conduct in "circumventing" and "bypassing" the Town's undisputed hiring procedures and practices was a matter of interest to the public and to qualified job candidates.

Finally, Appellees suggest that the *Banks* case upon which Mayhew relies "does not control" in light of *Garcetti*. (Doc. 27 at 52).  They are incorrect.  *Banks* remains good law, is a reported decision, and this and other courts in the circuit continue to rely upon it in First Amendment retaliatory discharge cases like this one.  In their effort to distinguish *Banks*, Appellees state that the plaintiff in the case also made her complaints to an outside entity. (*Id.*).  But that relates to the issue of whether the speech was "citizen" speech, not whether it touched on a matter of public concern.  Here the district court correctly found that Mayhew's

---

[5] Appellees incorrectly assert that "Mayhew has not presented evidence that Noble and Kyle Gill were fundamentally unqualified for their jobs or that Gill promoted either of them in bad faith." (Doc. 27 at 51).  Mayhew presented evidence of both. (Doc. 24 at 18-21).

communications about Gill's violations of Town policy and practice and appointment of unqualified individuals were not ordinarily with the scope of his work and were made as a citizen. (RE 59, Mem. Order at 22, Page ID # 2403).

Appellees further suggest that, to be a matter of public concern, the reported conduct has to be illegal. (Doc. 27 at 53). They are again incorrect. "'Matters of public concern include '*any* matter of political, social, or other concern to the community.'" *Miller v. City of Canton*, 319 Fed. Appx. 411, 416 (6th Cir. 2009) (quoting *Connick*, 461 U.S. at 146) (emphasis added). Like the plaintiff in *Banks*, Mayhew "refers to favoritism/nepotism in hiring, the lack of posting and interviewing for job vacancies, and the improper certification of staff in [her complaint letters]." *Banks*, 330 F.3d at 895. The Court should hold that "[t]he community would have an interest" in Gill's unprecedented conduct. *Id.* at 896-97. Appellees assert that Gill "believed it made the most sense" to promote Noble and his nephew without allowing other interested candidates, including Johnson, to apply or be considered. (Doc. 27 at 20). It did not "make sense," however, in light of the Town's policy and practice, HR Director Craig's recommendation that the positions be posted, and Parker's "objecting" to Gill's bypassing those procedures. (RE 40-4, Craig Dep. at 40-41, Page ID # 1033-34; RE 40-6, Parker Dep. at 40-41, Page ID # 1218-19; RE 40-5, Strange Dep. at 40-42, Page ID # 1135-37; RE 40-2, Mayhew Dep. Vol. II at 292, Page ID # 735). Nor do Appellees' assertions that

16

Gill "believed that Noble [and Kyle Gill] and all of the qualifications" for the positions and that Noble had done a "nice job" (Doc. 27 at 21) make sense where Gill knew that Noble did not have the required degree; that Mayhew had been disqualified for the job in the past for that very reason; that several employees expressed difficulty in working with Noble and reported that he was "dishonest" and had engaged in inappropriate conduct;[6] and that Noble had received multiple disciplinary write ups based on his documented inability to work with Plant management. (RE 40-3, Gill Dep. at 70-72, 170, 172-73, 175, Page ID # 861-63, 961, 963-64, 966; RE 42-3, Gill Dep. Ex. 28, Page ID # 1680; RE 40-5, Strange Dep. at 22-29, Page ID # 1117-24; RE 40-6, Parker Dep. at 61, Page ID # 1239). Mayhew's speech about Gill's conduct in his July 1, 2014, email and in the July 7, 2014, meeting implicated matters of interest to the public and to qualified candidates for public jobs.  Accordingly, his speech was protected.

---

[6] Appellees suggest that Mayhew "now describes Noble as dishonest and generally untrustworthy" (Doc. 27 at 14) but neglect to mention that other Plant employees, including Lloyd Johnson, Andy Jett, Keith Weatherly, Matt Johnson, and Jon Edwards, reported the same to Strange and Parker, and that they reported this to Gill. (RE 40-6, Parker Dep. at 33-36, 45-46, 61, Page ID # 1211-14, 1223-24, 1239; RE 40-5, Strange Dep. at 22-29, Page ID # 1117-24).

## CONCLUSION

As shown above and in his principal brief, Mayhew engaged in constitutionally protected speech activity. Accordingly, he respectfully requests that the Court reverse the judgment of the district court granting Appellees' motion for summary judgment and remand this case for further proceedings.

Respectfully submitted,

s/Douglas B. Janney III
Douglas B. Janney III (BPR No. 19112)
2002 Richard Jones Road
Suite B-200
Nashville, Tennessee 37215
(615) 742-5900

Counsel for Appellant Mark W. Mayhew

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 4,698 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

s/Douglas B. Janney III
Douglas B. Janney III

18

## CERTIFICATE OF SERVICE

I certify that I electronically filed and served this Reply Brief of Appellant Mark W. Mayhew using the Court's CM/ECF system upon Robert M. Burns, Howell & Fisher, PLLC, 300 James Robertson Parkway, Nashville, Tennessee 37201 on October 10, 2016.

s/Douglas B. Janney III
Douglas B. Janney III